******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEPARTMENT OF ADMINISTRATIVE
SERVICES *v.* BESTECH, INC. OF
CONNECTICUT ET AL.
(AC 48336)

Cradle, C. J., and Alvord and Seeley, Js.

*Syllabus*

The defendant contractor appealed from the trial court's judgment granting
the plaintiff state agency's request for an injunction barring the defendant
from pursuing arbitration of a certain claim related to a public works contract
between the parties. The defendant claimed that the court improperly granted
the plaintiff an injunction on the ground that the defendant's claim was
barred by sovereign immunity because the waiver in the statute (§ 4-61 (a))
governing disputes arising under public works contracts did not apply. *Held*:

The trial court properly enjoined arbitration of the defendant's claim, as the
claim did not fall within the limited waiver of sovereign immunity in § 4-61 (a).

Argued April 29—officially released July 28, 2026

*Procedural History*

Action seeking, inter alia, a declaratory judgment that
the named defendant is prohibited from arbitrating its
claim against the plaintiff, and for other relief, brought
to the Superior Court in the judicial district of Hartford,
where the plaintiff withdrew its complaint as against the
defendant American Arbitration Association; thereafter,
the case was tried to the court, *Chavey, J.*; judgment for
the plaintiff, from which the named defendant appealed
to this court. *Affirmed*.

*Steven B. Kaplan*, with whom, on the brief, was *Paul
R. Fitzgerald*, for the appellant (named defendant).

*John M. Russo, Jr.*, assistant attorney general, with
whom, on the brief, was *William Tong*, attorney general,
for the appellee (plaintiff).

*Opinion*

SEELEY, J. The principal issue in this appeal is
whether General Statutes § 4-61,[1] which waives the

---

[1]General Statutes § 4-61 provides in relevant part: "(a) Any person, firm
or corporation which has entered into a contract with the state, acting

state's sovereign immunity with respect to certain claims arising under public works contracts, applies in the present case so as to waive the sovereign immunity of the plaintiff, the Department of Administrative Services (department), in relation to an arbitration claim raised by the defendant Bestech, Inc. of Connecticut (Bestech)[2] for equipment left idle following a stop work order. On appeal, Bestech claims that the court improperly granted the department's application for injunctive relief barring Bestech from pursuing its arbitration claim against the department on the ground that its claim was barred by sovereign immunity because the waiver in §4-61 (a) did not apply. We disagree and, accordingly, affirm the judgment of the court.

The following procedural history and facts, as stipulated by the parties[3] and as summarized by the court, are relevant. "In 2017, [the department] awarded a contract to Bestech and three other contractors for specified hazardous materials abatement and removal services. The contract was a multisupplier goods and services contract, which did not itself authorize Bestech to ship goods or begin performance absent a duly authorized purchase order or, as alleged by Bestech, a notice to proceed. If Bestech were authorized to begin performance on a particular project under the contract, the pricing was fixed pursuant to schedules in exhibits B-1, B-2, B-3 and B-4

through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract or claims arising out of the awarding of a contract by the Commissioner of Administrative Services, bring an action against the state to the superior court for the judicial district of Hartford for the purpose of having such claims determined . . . .

"(b) As an alternative to the procedure provided in subsection (a) of this section, any such person, firm or corporation having a claim under said subsection (a) may submit a demand for arbitration of such claim or claims for determination . . . ."

[2]The complaint also named the American Arbitration Association as a defendant, but the action was later withdrawn as to it.

[3]The parties filed a joint stipulation of facts in lieu of an evidentiary hearing.

to the contract. Exhibit A (2) of the contract provided that Bestech 'shall not charge for equipment items not listed in the [e]xhibit B [p]rice [s]chedule without prior written approval from the [plaintiff] [c]lient [a]gency.' Exhibit A (2) of the contract further provided: 'The [c]lient [a]gency's representatives will monitor the use of all labor and equipment. If the [c]lient [a]gency representatives determine that equipment is not being utilized, such equipment will not be paid for while remaining idle.' . . .

"Bestech performed work at the former Bergin [Correctional Institution] prison property site and was paid for all work through the time of a stop work order in April 2021. Bestech did not provide abatement and demolition services under the contract from the time of the April 2021 stop work order through the expiration of the contract. Bestech alleges, however, that it kept its equipment at the project site in reliance on a state employee's representation that work would resume in June 2021. Bestech contends further that, through December 2021, the same state employee advised Bestech approximately monthly that work would resume shortly and that Bestech should keep its equipment on site. On or about April 26, 2022, [the department] advised Bestech that the project would not be performed under the contract and would be put out to bid. The contract expired on April 30, 2022. Bestech sought payment from [the department] for idle equipment costs after April 2021. On April 19, 2024, Bestech filed a demand for arbitration with [the American Arbitration Association] pursuant to § 4-61. The arbitration demand asserted, in pertinent part, that Bestech had incurred costs of over $1.4 million as a result of its inability to use the equipment that remained at the project site after April 2021 and that 'no provision in Bestech's contract with the [department] . . . prohibits Bestech from recovering this cost, where the [department] repeatedly directed Bestech to retain its equipment on the site for over a year.' " The department objected to and refused to submit to arbitration, raising the defense of sovereign immunity.

The department filed an application and verified complaint in Superior Court seeking injunctive relief. Specifically, in its verified complaint, the department alleged that Bestech's claim in its arbitration demand does not satisfy the limited sovereign immunity waiver under § 4-61 (a) because the claim raised therein did not arise "under" the parties' contract, as required for § 4-61 (a) to apply, and because the parties' contract expressly prohibits the recovery of idle equipment damages.[4] The department sought a temporary and/or permanent injunction enjoining Bestech from conducting any proceedings in connection with the arbitration or any other formal claim proceedings pursuant to § 4-61 related to the contract. Thereafter, Bestech filed a motion to dismiss the department's application for injunctive relief,[5] arguing that because its claim falls under the contract, the department is not protected by sovereign immunity, and, accordingly, the proper venue for the resolution of the dispute is in arbitration. The court heard oral argument on the department's application for injunctive relief and Bestech's motion to dismiss on November 20, 2024. See footnote 3 of this opinion.

In a December 17, 2024 memorandum of decision, the court determined that the waiver of sovereign immunity in § 4-61 (a) did not apply because Bestech failed to establish that its claim fell under the parties' contract. The court granted the department's application for an

---

[4]Specifically, in its verified complaint, the department notes that the contract states that the "[c]lient [a]gency's representatives will monitor the use of all labor and equipment. If the [c]lient [a]gency representatives determine that equipment is not being utilized, such equipment will not be paid for while remaining idle"; "[r]ental rates for all equipment are to be computed at the job site only. Pricing will not include trip, travel time, delivery time charges, or any other miscellaneous charges pertaining to the rental of equipment"; and "[t]he [c]ontractor shall not charge for equipment items not listed in the [e]xhibit B [p]rice [s]chedule without prior written approval from the [c]lient [a]gency."

[5]"[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *Kiewit Infrastructure Co.*, 239 Conn. App. 127, 132,      A.3d (2026).

injunction prohibiting Bestech from arbitrating its claim against the department. This appeal followed.

We begin with the following relevant standards and legal principles. "It is well established law that the state is immune from suit unless it consents to be sued by appropriate legislation waiving sovereign immunity in certain prescribed cases . . . . The state legislature . . . [however] possesses the authority to abrogate any governmental immunity by statute that the common law gives to the state and municipalities." (Internal quotation marks omitted.) *Himmelstein* v. *Windsor*, 304 Conn. 298, 307–308, 39 A.3d 1065 (2012).

"Prior to the enactment of § 4-61, suits against the state by contractors were not countenanced because of sovereign immunity. Individualized legislative authorization to sue was required to be sought by petition before an action could be brought against the state. . . . In 1957, the legislature enacted § 4-61 to reduce the number of petitions for permission to sue the state that it received involving suits over state construction contracts. . . . Another reason for allowing parties who had contracted with the state to sue the state directly without seeking legislative authorization was the hope that affording contractors the right to sue would reduce the costs of construction projects to the state by eliminating the cost of the lengthy legislative authorization process that was often built into state construction contracts. . . . Accordingly, § 4-61 was intended to foster competitive bidding for state construction contracts, which, in turn, would make it more likely that the cost to the state of such projects will be reduced. . . .

"In 1986, the legislature amended § 4-61 by adding subsection (b), which provides that a party may file a demand for arbitration with the American Arbitration Association in lieu of filing a complaint in the Superior Court. . . . The purpose of this amendment was to provide an alternative forum in which disputed claims arising under public works contracts could be resolved in a simpler, speedier and more efficient manner. . . . As we

repeatedly have observed, §4-61 was intended to carve out a narrow and limited exception to sovereign immunity. . . . The scope of this exception must be construed strictly, and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction." (Citations omitted; internal quotation marks omitted.) *Dept. of Transportation* v. *White Oak Corp.*, 287 Conn. 1, 11–13, 946 A.2d 1219 (2008).

On appeal, Bestech claims that the court improperly determined that the waiver of sovereign immunity in §4-61 (a) does not apply to its claim. In support of this claim, Bestech makes several supporting arguments. Preliminarily, it contends that the court misinterpreted §4-61 (b) by substituting its judgment for that of the arbitrator. In the alternative, it contends that its claim falls under the contract as required by §4-61 (a), reasoning that (1) the court improperly analyzed the merits of its claim, (2) whether a contractual provision concerning idle equipment damages exists in the contract has no bearing on whether its claim falls under the contract, and (3) the department's assertion of contractual defenses demonstrates that Bestech's claim falls under the contract. We address these arguments in turn.

As a preliminary matter, Bestech contends that the court "improperly substituted its own judgment for that of an arbitrator. Indeed, by interposing itself as the adjudicator of Bestech's contractual claims . . . [the] trial court ignored the express provision contained in . . . §4-61 (b) that per the contractor's election, the dispute should be resolved in arbitration." The plain language of §4-61 (b), however, makes clear that Bestech can only submit a demand for arbitration if it first has a claim under §4-61 (a). Specifically, §4-61 (b) provides in relevant part that, "[a]s an alternative to the procedure provided in subsection (a) of this section, any such person, firm or corporation *having a claim under said subsection (a)* may submit a demand for arbitration of such claim . . . ." (Emphasis added.) Our Supreme Court stated in *Dept. of Transportation* v. *White Oak Corp.*, supra, 287

Conn. 1, that "the authority to file a demand for arbitration under §4-61 (b) is contingent upon the existence of a disputed claim or claims for which an action in the Superior Courts properly could be filed under §4-61 (a). Stated another way, waiver of the state's sovereign immunity under §4-61 (a) is a condition precedent to the arbitral submission in §4-61 (b). . . . Accordingly, whether an arbitration is barred by the doctrine of sovereign immunity pursuant to §4-61 (a) is a matter for the courts, not for the arbitrators, to decide." (Citation omitted.) Id., 7 n.8.

Accordingly, in order to address Bestech's contention that its claim falls under the contract, we turn to the language of §4-61 (a), which provides that a party who has contracted with the state for certain public works contracts may bring an action against the state "in the event of any disputed claims *under* such contract . . . ."[6] (Emphasis added.) Whether §4-61 (a) operates so as to waive sovereign immunity with respect to Bestech's claim presents an issue of statutory interpretation, over which our review is plenary. See *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 7. "General Statutes §1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) Id., 8.

We note that "[o]ur analysis is . . . specifically illuminated by the well settled principle that when the state waives sovereign immunity by statute a party attempting to sue under the legislative exception must come clearly within its provisions, because [s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed . . . . Where there is any doubt about [the] meaning or intent [of a statute in derogation

---

[6]See footnote 1 of this opinion.

of sovereign immunity, it is**]** given the effect which makes the least rather than the most change in sovereign immunity. . . . The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed by the use of express terms or by force of a necessary implication. . . . Thus, a party who seeks to litigate or arbitrate a disputed claim arising under a public works contract bears the burden of proving that the claim fits precisely within the narrowly drawn reach of § 4-61." (Citation omitted; internal quotation marks omitted.) Id., 8–9.

Our Supreme Court in *Dept. of Public Works* v. *ECAP Construction Co.*, 250 Conn. 553, 737 A.2d 398 (1999) (*ECAP*), stated that "[t]he legislature's use of the word 'under,' [in § 4-61 (a)] as opposed to a broader term such as 'related to,' 'connected with' or 'derived from,' indicates an intent to authorize only those disputed claims against the state that fall *directly* under the contract itself. To permit an action against the state for a claim that is related to or connected with a public works contract would expand the limited waiver of immunity inherent in § 4-61 beyond the statute's plain language."[7] (Emphasis added.) Id., 559.

Bestech argues that, because it alleged in its arbitration demand that the department breached the parties' contract, its claim falls under the parties' public works

[7]Bestech argues that "*ECAP* has virtually no bearing on the instant dispute. In *ECAP*, the defendant contractor was attempting to arbitrate a dispute related to a settlement agreement with the state, not the underlying contract between the parties." *ECAP* differs from the present case in that it centers on whether a contractor, who claimed that the state breached the parties' public works contract, may compel the state to arbitrate a dispute concerning an alleged settlement agreement between the parties as to an underlying breach of contract claim. See *Dept. of Public Works* v. *ECAP Construction Co.*, supra, 250 Conn. 555. Regardless of this distinction, *ECAP*, nonetheless, discusses the meaning of the word "under" in § 4-61 (a), which meaning does not change depending on the facts of the case or the circumstances of the parties. Furthermore, in *Bacon Construction Co.* v. *Dept. of Public Works*, 294 Conn. 695, 987 A.2d 348 (2010), our Supreme Court stated that "*ECAP* correctly interprets the scope of the waiver of sovereign immunity contained in § 4-61 . . . ." Id., 715.

contract and that the court improperly analyzed the merits of its claim when it looked to the contractual language cited in Bestech's arbitration demand to determine if its claim fell under the contract. Bestech's argument relies on the premise that, in determining whether a claim is under the contract, courts may not look to the contractual language upon which the party making a demand for arbitration § 4-61 (b) relies in order to determine if that claim falls under the contract. As stated by this court in *Sagamore Group, Inc.* v. *Commissioner of Transportation*, 29 Conn. App. 292, 614 A.2d 1255 (1992), however, "[w]e must . . . keep in mind the general principles controlling the interpretation of statute's waiving the state's sovereign immunity. It is well established that statutes in derogation of the state's immunity from suit should be strictly construed so that the state's sovereignty may not be undermined. . . . Under that rule of construction, [a party who seeks to litigate or arbitrate a disputed claim] must prove . . . that there is a precise fit between the narrowly drawn reach of the relevant statute, § 4-61, *and the contractual language upon which* [*that party*] *depends.*" (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 300–301.

Accordingly, given that (1) Bestech bears the burden of proving that its claim "fits precisely within the narrowly drawn reach of § 4-61"; *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 9; (2) immunity is legislatively waived under § 4-61 (a) only for claims that "fall directly under the contract itself"; *Dept. of Public Works* v. *ECAP Construction Co.*, supra, 250 Conn. 559; and (3) Bestech must prove "that there is a precise fit between the narrowly drawn reach of the relevant statute, § 4-61, and the contractual language upon which [it] depends"; *Sagamore Group, Inc.* v. *Commissioner of Transportation*, supra, 29 Conn. App. 301; it is evident that we may look to the contractual language relied on by Bestech in order to determine if its claim falls under § 4-61 (a).

With these principles in mind, we turn to the contractual provisions cited by Bestech in support of its

argument that its claim falls under the contract.[8] In its arbitration demand, Bestech cited five contractual provisions concerning payment for accepted goods or services, reimbursement for performance rendered, withholding of payment if Bestech has not performed, the department's discretion to set off costs or expenses incurred as a result of unexcused nonperformance, and price schedules for services and commodities.[9] Bestech argues on appeal that "the absence of a provision in the contract which explicitly permits Bestech to recover damages against the state for 'idle equipment' is of no consequence . . . ." It, however, is of consequence that none of the general contractual provisions cited by Bestech "even arguably"—as the trial court framed

---

[8]Bestech also argues that the following "additional factors," cited by the trial court in support of its conclusion that Bestech's claim does not arise under the contract, are not dispositive: (1) Bestech's calculation of claimed damages does not depend on any provision in the contract; (2) Bestech's arbitration demand incorporates by reference Bestech's prior notice of claim, to which was attached a correspondence with the department that claims damages through June 2022, which postdates the April 2022 expiration of the parties' contract; and (3) Bestech's arbitration demand alleges breach of implied contractual obligations. We agree that none of these additional factors is dispositive. Nevertheless, that does not impact our conclusion, made in the exercise of our plenary review, that Bestech's claim does not fall within the scope of § 4-61 (a).

[9]Specifically, in its demand for arbitration, Bestech cited the following contractual provisions in support of its claim: (1) "payment for all accepted [g]oods or [s]ervices shall be due within forty-five (45) days after acceptance of the [g]oods or [s]ervices"; (2) "[t]he [c]lient [a]gency shall, within forty-five (45) days of the effective date of [t]ermination, reimburse the [c]ontractor for its [p]erformance rendered and accepted by the [c]lient [a]gency in accordance with [e]xhibit A, in addition to all actual and reasonable costs incurred after [t]ermination in completing those portions of the [p]erformance which the notice required the [c]ontractor to complete"; (3) "[i]f [the department] believes that the [c]ontractor has not performed according to the [c]ontract, the [c]lient [a]gency may withhold payment in whole or in part pending resolution of the [p]erformance issue, provided that [the department] notifies the [c]ontractor in writing prior to the date that the payment would have been due in accordance with [e]xhibit B"; (4) "[t]he [s]tate, in its sole discretion, may setoff . . . any costs or expenses that the [s]tate incurs resulting from the [c]ontractor's unexcused nonperformance under the [c]ontract"; and (5) on the basis of the price schedule in exhibit B, the state has failed to pay Bestech at the agreed upon rates.

it—provides for the payment for equipment left idle during a period in which no work was being performed. Indeed, the contract expressly precludes recovery for equipment that is left idle.

This is not a situation in which a contractor cites contractual provisions arguably providing for relief under the contract. Rather, Bestech cites contractual provisions that relate, in general, to the payment for services rendered even though its claim does not concern nonpayment for services or commodities and even though the department paid Bestech in full for all work performed prior to the stop work order, after which order no abatement or demolition services were performed. We agree with the trial court that "the contractual provisions cited in Bestech's arbitration demand are general provisions, which require, for example, payment for contracted goods and services. Given the necessarily strict construction of § 4-61 that this court must apply, the court is not persuaded that simply invoking the payment, termination, breach and other general provisions in a public works contract with the state means that such a claim against the state 'arises directly under' the contract. If that were the case, then any claim framed as a failure to pay could be brought against the state, even where the contract itself neither includes a provision permitting or requiring the specific payment at issue nor is the subject of a good faith dispute about what a particular provision means."

The central focus of Bestech's claim is its alleged reliance on oral representations. Bestech claimed in its demand that it kept equipment on the project site in reliance on the representations of an agent of the department that the project would resume on June 1, 2021, and sought $1,428,388.75 in additional compensation arising from its alleged inability to use the equipment it mobilized to the property site. Specifically, in its demand for arbitration, Bestech relies on its assertion that, "[b]etween April 8, 2021, and April 26, 2022, on an approximately monthly basis, [an authorized

representative of the department, Michael Sanders] informed Bestech that work was expected to resume shortly and that Bestech should keep its equipment on the project site in anticipation of an imminent resumption of work. . . . Contrary to [Sanders'] representation, work on the project did not resume at any point prior to April 26, 2022. . . . On April 26, 2022, after more than a year of delay, Bestech was informed by the [department] that the project would not be finished under Bestech's term contract and that the remaining work would be put out to bid." Bestech, however, cited no contractual provisions that even arguably provide for payment for equipment left idle on the basis of reliance on oral representations that work would resume shortly.[10] Because Bestech has cited no contractual provisions relating to payment based on its reliance on oral representations, such reliance—although "related to" the public works contract—does not fall under it. See, e.g., *Dept. of Public Works* v. *ECAP Construction Co.*, supra, 250 Conn. 559 ("The legislature's use of the word 'under,' [in §4-61 (a)] as opposed to a broader term such as 'related to,' 'connected with' or 'derived from,' indicates an intent to authorize only those disputed claims against the state that fall directly under the contract itself. To permit an action against the state for a claim that is related to or connected with a public works contract would expand the limited waiver of immunity inherent in §4-61 beyond the statute's plain language.").

Bestech relies on the Superior Court case of *Walter Kidde Constructors, Inc.* v. *State*, 37 Conn. Supp. 50, 434 A.2d 962 (1981), written by former Chief Justice

---

[10]Bestech asserts in its statement of issues on appeal that the trial court erred in determining that its claim sounds in detrimental reliance and/or promissory estoppel and thus did not fall under the contract. Bestech does not include this in the argument section of its brief. Despite this omission; *Bongiorno* v. *J & G Realty, LLC*, 211 Conn. App. 311, 323, 272 A.3d 700 (2022) ("[w]he[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived" (internal quotation marks omitted)); we note that we do not read the trial court's decision as determining that Bestech's claim sounds in detrimental reliance and/or promissory estoppel.

Charles S. House, for the proposition that a contractor may assert a claim against the state for damages incurred as a result of delays caused by the state. In *Walter Kidde Constructors, Inc.*, the general contractor plaintiffs brought an action seeking, inter alia, damages due to delays arising from the state's breaches of the parties' construction contract, which included: failing to give the plaintiffs access to the construction site for an unreasonably long period of time beyond the date on which the plaintiffs were required by the contract to commence work; by providing defective, inadequate and incomplete plans and specifications; by issuing " 'hold orders' " that remained in effect for inordinately long periods of time; by failing to process change order proposals in a prompt and timely manner; by permitting interference with the plaintiffs' work; by unreasonably and improperly ordering acceleration of the plaintiffs' work schedule; by failing to approve shop drawings in a timely manner; by unreasonably and improperly forcing the plaintiffs to perform work out of sequence; and by failing to make reasonable and timely inspections and reasonable efforts promptly to resolve disputes. Id., 52–53. Specifically, the plaintiffs were liable for a penalty of $2500 for each day that construction ran beyond 1100 days and, in that case, construction required more than 1977 days. Id., 51–52. The trial court rejected the state's defense of sovereign immunity under §4-61, reasoning that "[b]y the provisions of §4-61 the state has waived the defense of sovereign immunity in such cases as this arising out of contracts with the state 'for the design, construction, repair or alteration of any state . . . building or other public works.' The waiver permits 'any party' to a public works contract with the state of Connecticut to bring suit for the determination of 'any disputed claims under such contract.' The claims asserted by [the plaintiffs] are such claims." Id., 67. In analyzing the merits of the claims, the court noted that "[a] computation of the consequent damages to [the plaintiffs] involves damages of two sorts: (a) delay damages due to the extended periods of field and home office overhead and (b) damages due to

disruption, loss of productivity, inefficiency, acceleration and escalation. Both elements of damage are well recognized as compensable delay damages recoverable by a contractor. See *Southern New England Contracting Co.* v. *State*, 165 Conn. 644, 660–63, 345 A.2d 550 (1974) and cases cited therein; see also annot., 115 A.L.R. 65, 'Right of Building or Construction Contractor to Recover Damages resulting from Delay Caused by the Default of Contractee.'" *Walter Kidde Constructors, Inc.* v. *State*, supra, 82.

Bestech contends that, "[l]ike the plaintiff[s] in *Walter Kidde* [*Constructors, Inc.*], Bestech has asserted a claim against the [department] for damages resulting from the [department's] failure to provide proper access to the project site and the [department's] issuance of multiple 'hold orders.' Per *Walter Kidde* [*Constructors, Inc.*], Bestech is entitled to bring such a claim against the [department] pursuant to . . . § 4-61. Bestech's ability to do so is not dependent on the existence of a provision in the contract governing 'idle equipment' claims; rather, such claims are 'well recognized as compensable' in actions against the [department] brought pursuant to § 4-61."

The issue raised in the present appeal, however, does not depend on whether Connecticut recognizes the recovery of delay damages[11] but, rather, whether Bestech's claim for damages for equipment that it left idle during a period in which no work was performed in reliance on oral representations fell under the parties' contract. In *Walter Kidde Constructors, Inc.*, the plaintiffs claimed that the actions of the state in failing to provide access to the project site and in otherwise delaying the plaintiffs' completion of construction constituted breaches of the parties' contract. In the present case, by contrast, Bestech has not cited any contractual provisions providing for recovery based on oral representations that work

[11]Cases such as *Southern New England Contracting Co.* v. *State*, supra, 165 Conn. 644, which does not mention sovereign immunity, make clear that delay damages, in general, are recoverable. See id., 660–63.

would resume shortly. More significantly, the contract in *Walter Kidde Constructors, Inc.*, required the plaintiffs to pay a penalty of $2500 for each day that construction ran beyond 1100 days and, in contrast, the abatement and demolition services contract in the present case did not impose such a penalty. Rather, the parties in the present case stipulated that the department paid Bestech for work it performed until the stop order and that the department informed Bestech that the project would not be performed under the contract and would be put out to bid. Accordingly, for the foregoing reasons, we do not consider *Walter Kidde Constructors, Inc.*, to constitute persuasive authority under the circumstances of the present case, as it is inapposite.

Lastly, Bestech contends that the department's "assertion of contractual defenses" demonstrates that its claim arises under the contract.[12] By this argument, Bestech seeks to prove that its claim falls directly under the contract by examining issues raised by the department, which include sovereign immunity and that the contract expressly prohibits the recovery of idle equipment damages.[13] To the extent that these issues are inconsistent, Connecticut allows parties to assert alternative and/or inconsistent theories. See, e.g., *Campbell* v. *Plymouth*, 74 Conn. App. 67, 76, 811 A.2d 243 (2002). More significantly, the burden rests with Bestech to demonstrate

[12]It is unclear at what point in the proceedings that Bestech argues that the department raised contractual defenses. As stated in the parties' stipulation, in a letter responding to Bestech's demand for arbitration, the department denied Bestech's idle equipment claim pursuant to the terms of the contract. Additionally, according to the stipulation, in response to the demand for arbitration, the department objected to and refused to submit to arbitration at the outset and raised the defense of sovereign immunity. In the department's complaint, it raises the issue of sovereign immunity and that the contract prohibits the recovery of idle equipment damages. It does not matter in our analysis at what point the department raised the issue because that does not alter Bestech's burden.

[13]One such contractual provision cited by the department states that "[t]he [c]lient [a]gency's representative will monitor the use of all labor and equipment. If the [c]lient [a]gency representatives determine that equipment is not being utilized, such equipment will not be paid for while remaining idle."

that there exists a precise fit between the narrowly drawn reach of the relevant statute, §4-61, and the contractual language on which Bestech depends. *Sagamore Group, Inc.* v. *Commissioner of Transportation*, supra, 29 Conn. App. 301. This, however, Bestech has not done.

In sum, we conclude that Bestech's claim did not fall within the limited waiver of sovereign immunity in §4-61 (a). Accordingly, the court properly enjoined arbitration of Bestech's claim.

The judgment is affirmed.

In this opinion the other judges concurred.